IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROSETTA RUDD,                          )
                                       )
      Plaintiff,                       )
                                       )
v.                                     )        CASE NO. 1:17-cv-847-SRW
                                       )
ANDREW SAUL,                           )
Commissioner of Social Security,[1]    )
                                       )
      Defendant.                       )

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Rosetta Rudd commenced this action on December 15, 2017, pursuant to

42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner

denying her application for supplemental security income ("SSI") benefits. *See* Doc. 1; R

10-28. Plaintiff protectively filed an application for SSI benefits on May 1, 2014, alleging

disability as of February 1, 2013, due to anxiety, depression, hypertension, and low back

pain.[3] *See* R. 208, 303. On November 1, 2016, Administrative Law Judge L. Dawn Pischek

("the ALJ") issued an adverse decision after holding a hearing on plaintiff's application.

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Nancy A. Berryhill, Acting Commissioner of Social Security, as the defendant in this lawsuit. The Clerk of Court is **DIRECTED** to take the appropriate steps to reflect this change on the electronic docket.

[2] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed at the administrative level. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[3] Plaintiff filed a prior application for SSI on August 13, 2013, which was denied on October 21, 2013. R. 95. There is no indication that plaintiff appealed that determination.

*See* R. 10-28. The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* R. 1-5.

In the instant appeal, plaintiff asks the court to reverse the Commissioner's decision and award benefits or, in the alternative, to remand this cause to the Commissioner under sentence four of 42 U.S.C. § 405(g). *See* Docs. 1 at 2; 12 at 13. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c); *see also* Docs. 10, 11. For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be reversed and remanded for additional proceedings.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words,

this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for SSI and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i-v). The Commissioner must determine, in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## ADMINISTRATIVE HEARING AND ALJ'S DECISION

The administrative hearing was held on February 26, 2016. Plaintiff appeared and was represented by counsel. Plaintiff testified, as did a vocational expert ("VE"). R. 52-71.

By decision dated November 1, 2016, the ALJ found that plaintiff has not engaged in substantial gainful activity since May 1, 2014.[4] R. 12. The ALJ found that plaintiff has

---

[4] The ALJ referenced the application date because SSI is not payable prior to the month following the month in which the application was filed. R. 11. The ALJ indicated that references in the decision to evidence predating October 21, 2013, were for historical purposes only and did not

the severe impairments of minimal early degenerative disc disease, degenerative spur on the left heel with left ankle swelling, chronic obstructive pulmonary disease, obesity, hypertension, diabetes mellitus, affective disorder, anxiety disorder, and personality disorder, but none of the impairments or combination of impairments met or medically equaled a listed impairment. R. 12-13. After considering plaintiff's impairments, symptoms, and the record as a whole, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work, "except that she can never be exposed to unprotected heights or hazardous machinery; is limited to simple, routine tasks with occasional change in a routine work setting; can never interact directly with the public; and can work in close proximity to others but must work independently, not in a team." R. 17-18. With the assistance of VE testimony, the ALJ determined that plaintiff was unable to perform her past relevant work, but she could perform other jobs that exist in significant numbers in the national economy. R. 26-27, 69. Upon that determination, the ALJ concluded that plaintiff has not been under a disability since May 1, 2014. R. 27-28.

## ISSUES ON APPEAL

Plaintiff raises one claim on appeal—that the Commissioner's decision is not supported by substantial evidence because it is inconsistent with the overwhelming majority of the medical opinion evidence of record. Doc. 12 at 3. Plaintiff challenges the ALJ's findings related to the opinion evidence of Dr. Fernando Lopez, her treating psychiatrist; Dr. Mariel Clark, a consulting psychologist; Dr. Samuel Williams, a non-

---

constitute a reopening of plaintiff's prior application for SSI or a revision of the prior decision. R. 10, 26.

examining psychiatrist, and Drs. Sarah Olaso and Sam Banner; the latter two performed consulting physical exams. Doc. 12 at 7-13. The Commissioner maintains that the ALJ properly weighed the opinion evidence and the decision is supported by substantial evidence. Doc. 13.

Because plaintiff's challenge to the ALJ's consideration of the psychiatric and psychological opinion evidence warrants remand for further consideration, the court does not reach her argument related to the physical consultative examiners.

## DISCUSSION

### I.     Summary of the psychiatric and psychological evidence

In early 2013, plaintiff was hospitalized for three days due to suicidal thoughts.[5] *See* R. 415-16. Shortly thereafter, plaintiff began treatment with Dr. Lopez at SpectraCare Health Systems, Inc. ("SpectraCare"). The bulk of the mental health records in this case are from SpectraCare, including Dr. Lopez's treatment notes and summaries from group and individual therapy sessions.[6]

In August 2014, Dr. Clark evaluated plaintiff upon request of the DDS. On a mental status exam, Dr. Clark noted that plaintiff was alert and oriented; had an anxious and depressed affect; had intact memory; did not display evidence of obsessions or delusions;

---

[5] Dr. Lopez treated plaintiff during the hospitalization, diagnosed bipolar disorder, and prescribed medication. R. 415.

[6] Dr. Lopez's treatment records are sparse, primarily documenting medication management and referrals to group and individual therapy. *See, e.g.,* R. 455, 457, 459, 498, 522, 524, 526, 561, 564, 576, 579. The group and individual therapy notes are relatively sparse as well. Plaintiff continued treatment with Dr. Lopez and attended group and individual therapy at SpectraCare through the time of the hearing in 2016.

had reasonably appropriate, linear, and goal directed thoughts; and had good insight and judgment. R. 508-09. Dr. Clark diagnosed major depression, recurrent, severe with psychotic features; panic disorder with agoraphobia; rule out obsessive-compulsive disorder; physical abuse, victim; and sexual abuse of a child, victim. R. 510. She assessed a global assessment of functioning ("GAF") score of 45 and stated that plaintiff's prognosis was "guarded."[7] *Id.* Dr. Clark determined that plaintiff "would exhibit moderate to severe impairments when expected to respond appropriately to supervision, coworkers, and work pressures encountered in the typical work environment on a sustained basis." R. 511.

In September 2014, Dr. Williams completed a mental RFC assessment form after reviewing plaintiff's claim file. He found that plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. R. 106-07. He determined that plaintiff could understand, remember, and carry out short and simple instructions; she could pay attention

---

[7] A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed., Text Revision 2000). A GAF of 41-50 indicates either serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34. The DSM-V discontinued use of GAF scores. The Commissioner also has declined to endorse the use of GAF scores. *See Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)).

for two hour time periods; she would work best in a well-spaced area; contact with the general public and coworkers should be casual; feedback should be constructive and supportive; and changes in the workplace should be infrequent and gradual. R. 106-08.

In November 2014, Dr. Lopez completed a form that addressed plaintiff's degree of mental impairment in eighteen areas (Dr. Lopez's "RFC opinion"). R. 513-15. He determined that plaintiff had "moderate" impairment in her ability to interact appropriately with the general public; ask simple questions or request assistance; understand, remember, and carry out simple instructions; and sustain a routine without special assistance; and "marked" impairment in her ability to get along with coworkers or peers; understand, remember, and carry out complex instructions; understand, remember, and carry out repetitive tasks; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday/workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; make simple work-related decisions; respond appropriately to supervision; respond appropriately to changes in the work setting; respond to customary work pressures; and be aware of normal hazards and take appropriate precautions.[8] R. 513-15. He also found that plaintiff had moderate constriction of interests, moderate deterioration in personal habits, and marked restriction in daily activities. *Id.* at 513.

_____

[8] The form defined moderate as "an impairment which affects but does not preclude ability to function," and is marked as "an impairment which seriously affects ability to function." R. 513.

In January 2016, Dr. Clark once again evaluated plaintiff on request of the DDS. Her findings on a mental status exam remained the same except for the addition of lethargic motor activity, a sad facial expression, and some forgetfulness and cognitive slowing on digit spans. *Compare* R. 590-91 *with* R. 508-09. Her diagnostic impressions included major depressive disorder, recurrent, severe with psychotic features, with anxious distress; unspecified bipolar and related disorder; posttraumatic stress disorder (provisional); borderline intellectual functioning (provisional); academic or learning problems; and history of physical, sexual, and psychological abuse in childhood. R. 592. She reported that the prognosis for a favorable response to treatment within the next six to twelve months was poor considering the chronic and severe nature of plaintiff's symptoms. R. 593. Dr. Clark stated that she would anticipate "severe" impairment in plaintiff's ability to respond appropriately to supervision, coworkers, and work pressures. *Id.*

Dr. Clark also completed a form captioned Medical Source Statement of Ability to do Work-Related Activities (Mental). She determined that plaintiff had "mild" limitations in understanding, remembering, and carrying out simple instructions and making judgments on simple work-related decisions; "moderate" limitations in understanding, remembering, and carrying out complex instructions and interacting appropriately with the public; and "marked" limitations in making judgments on complex work-related decisions, interacting appropriately with supervisors and coworkers, and responding appropriately to usual work situations and to changes in a routine work setting.[9] R. 594-96.

---

[9] The medical source statement defined moderate as "more than a slight limitation . . ., but the individual is still able to function satisfactorily," which is marked as a "serious limitation . . . [t]here is substantial loss in the ability to effectively function." R. 594.

## II.    Treating Physician Evidence and Dr. Lopez[10]

Plaintiff argues that the ALJ failed to provide adequate reasons for not according great weight to Dr. Lopez's RFC opinion. She contends that the ALJ's reasons were merely a "vague and overly sunny summarization" of the record that selectively ignored other evidence to the contrary. In her view, Dr. Lopez's RFC opinion is supported by his treatment records, the use of multiple psychotropic drugs, Dr. Clark's opinions, and plaintiff's testimony. Plaintiff also complains that the ALJ failed to identify which parts of Dr. Lopez's RFC opinion were accorded partial weight. (Doc. 12 at 7-11).

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when:

- the treating physician's opinion was not bolstered by the evidence,
- the evidence supported a contrary finding; or
- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.
- 

*Id.* at 1241. The Commissioner must specify what weight is given to a treating physician's opinion, and any reason for giving it no weight at all. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986) (citations omitted). Failure to do so is reversible error. *Id.* As this court has explained:

---

[10] The ALJ weighed the opinions of Drs. Lopez, Clark, and Williams prior to determining whether plaintiff's mental impairments met or equaled a listing <u>and</u> before determining plaintiff's mental RFC. *See* R. 16-17, 22-24. The ALJ's weighing of the opinions in connection with plaintiff's mental RFC is pertinent to the issues on appeal.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a) (2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of a treating physician constitutes reversible error).

*Rudolph v. Berryhill*, 2018 WL 1527827, at *5 (M.D. Ala. Mar. 28, 2018) (quoting *Albery v. Comm'r of Soc. Sec.*, 2012 WL 2589297, at *7 (M.D. Fla. June 7, 2012), *report and recommendation adopted*, 2012 WL 2589267 (M.D. Fla. July 3, 2012), and citing *Winschel*, 631 F.3d at 1179)).

The ALJ gave "partial weight" to Dr. Lopez's RFC opinion. R. 23. The ALJ found that some aspects of the opinion were consistent with the evidence, but gave it weight only "to the extent that it [w]as consistent with the ability to perform a range of unskilled work with some social functioning limitations as reflected in the residual functional capacity in this decision." *Id*. The ALJ then stated:

The evidence since the application date documents the claimant's range of activities and social interactions (Hearing testimony and Exhibits 16E, 18E, 12F, 14F, and 18F).

Her euthymic mood; stable mood; expressive affect; appropriate appearance; clean appearance; good hygiene and grooming; good eye contact; cooperativeness; clear and normal speech; appropriate behavior; good mood; alertness; orientation; attentiveness; good insight and judgment; ability to complete ascending serial threes; ability to complete simple calculation tasks involving addition, subtraction, multiplication, and division without the aid of pencil and paper; intact immediate retention and recall; ability to name five major cities and describe a celebrity's profession; appropriate, linear, and goal directed thought process; sufficient effort and motivation; ability to understand, carry out, and remember instructions; appropriate perception; ability to follow a three-step command; ability to spell a word forwards and backwards; grossly intact immediate, recent, and remote memory; good general fund of information; abstraction ability; and appropriate abstractions regarding simple and moderately complex paired objects have been noted on examination (Exhibits 9F, 12F, 14F, 16F, and 18F).[11]

[Plaintiff's] active participation and discussion, interest, insight, leadership, and feedback to other group members have been noted during group therapy (Exhibits 14F, 16F, and 17F).

R. 23-24.

The ALJ's consideration of Dr. Lopez's RFC opinion is inconsistent with the above authority. The ALJ did not explain what is meant by "partial weight" or how that assignment differs from "substantial weight."[12] Nor is the meaning of this term evident from the context of the ALJ's decision. Although the ALJ found that "some aspects" of Dr. Lopez's opinion were consistent with the evidence and accorded his opinion weight to the

---

[11] Dr. Lopez occasionally noted euthymic/stable/good mood, expressive affect, and appropriate behavior and perception. *See, e.g.,* R. 455, 457, 459, 524, 526, 561, 564, 576, 579. All other findings were documented in Dr. Clark's reports. *See* R. 508-11, 590-93.

[12] Although the ALJ noted that Dr. Lopez was "a treating medical source," *see* R. 23, it is unclear whether she considered his RFC opinion in accordance with the regulations after determining that it was not entitled to substantial weight. *See* 20 C.F.R. § 416.927(c) (stating that when an ALJ determines that a treating opinion is not entitled to controlling weight, the ALJ must consider several factors in deciding how much weight to give the opinion, such as the length of treatment, the consistency of the opinion with the record, and the specialization of the treating physician).

extent that it was consistent with her RFC determination, the decision does not identify which parts of Dr. Lopez's opinion evidence the ALJ rejected and why. Although the court can discern from the decision whether the ALJ accepted or rejected a few of the eighteen limitations assessed by Dr. Lopez, it is left to ferret out whether the other limitations were or were not included in the "partial weight" assigned to this long-time treating psychiatrist's RFC opinion. In these circumstances, the ALJ's failure to state with particularity the weight given to Dr. Lopez's RFC opinion and the reasons therefor precludes the court from determining whether the decision is rational and supported by substantial evidence, and remand is required. *See Winschel*, 631 F.3d at 1179.

The decision also fails to explain adequately the ALJ's basis for rejecting most of the limitations assessed by Dr. Lopez. The ALJ purportedly gave three reasons for rejecting Dr. Lopez's opinion: plaintiff's activities and interactions, exam findings noted by Drs. Lopez and Clark, and findings noted in group therapy records. *See* R. 23. All are problematic.

The ALJ's first reason falls short on several grounds. First, the ALJ states only that the evidence documents plaintiff's range of activities and social interactions and cites plaintiff's hearing testimony and a list of exhibits. R. 23. The ALJ does not identify specific activities or social interactions or provide record cites, aside from exhibit numbers.[13] Nor does the ALJ explain how any specific activity or social interaction undercuts or contradicts

---

[13] The ALJ cites plaintiff's hearing testimony, exhibits 16E and 18E (function reports completed by plaintiff and her father in June 2014), exhibits 12F and 18F (Dr. Clark's consultative psychological exam reports), and exhibit 14F (records from SpectraCare dated July 2014-April 2015). *See* R. 23.

any of the specific moderate and marked limitations assessed by Dr. Lopez. Absent some explanation, the court is once again left to guess as to the ALJ's reasoning and is unable to determine whether the decision is supported by substantial evidence. *See Winschel*, 631 F.3d at 1179; *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (stating that ALJ must provide a logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings); *Austin v. Astrue*, 2008 WL 2385520, at *14 (N.D. Fla. June 9, 2008) (same).

To the extent that the ALJ was referring to plaintiff's "activities of daily living" identified at step three in discounting Dr. Lopez's RFC opinion—specifically, his assessment of moderate constriction of interests, moderate deterioration in personal habits, and marked restriction of daily activities—the ALJ did not explain how those activities were at odds with any of the other fifteen specific limitations he assessed.[14] *See* R. 16-17. Rather, the ALJ essentially provided a laundry list clipped from the function reports submitted by plaintiff and her father and selected items from Dr. Clark's summary of plaintiff's activities. *See id.; see also* R. 313-19, 329-35, 509, 592. Moreover, many of the listed activities are incomplete—i.e., the ALJ recites plaintiff's reports of activities, but not plaintiff's limiting description of them.[15] *See Bosarge v. Berryhill*, 2017 WL 1011671, at

---

[14] At step three, the ALJ found that Dr. Lopez's "overly restrictive opinion is inconsistent with the evidence since the application date related to the claimant's activities of daily living." R. 16. In support, the ALJ cited the same exhibits as those referenced in n.13. *See* R. 16-17 (citing exhibits 16E, 18E, 12F, 14F, and 18F). Aside from one notation that plaintiff tries to smile and enjoy her granddaughter in order to cope with anxiety, *see* R. 530, the court cannot ascertain the ALJ's reason for citing exhibit 14F in relation to plaintiff's daily activities.

[15] For example, the ALJ cites to plaintiff's driving, shopping, playing with her grandchildren, attending church services, and sewing but does not address how often she does those activities.

*7 n.6 (S.D. Ala. Mar. 15, 2017) (finding that plaintiff's daily activities were not as wide-ranging as the ALJ suggested because the manner in which he described them bore little resemblance to the manner in which she described them); *Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006) (finding ALJ's selective description of plaintiff's activities disingenuous because he accepted her listing of her activities but not her limiting description of them). Other listed activities appear unrelated or irrelevant to Dr. Lopez's opinion that plaintiff would be markedly limited in her ability to respond appropriately to supervisors/coworkers, work changes, and work pressures.[16]

Furthermore, the ALJ appears to give significant weight to plaintiff's "babysitting her grandchildren; having taken care of one of her grandchildren overnight while her daughter worked full-time until September 2015; [and] having taken care of her ill father once or twice a week until the middle of 2015." R. 16-17. Those activities, however, appear overstated and/or do not pertain to the entire adjudicative period. The ALJ did not provide a specific record citation supporting the assertion that plaintiff babysat her grandchildren during the adjudicative period, and plaintiff testified that the last time she watched one grandchild was in August or September 2015. *See* R. 58-59. Although plaintiff testified

---

*See* R. 16-17. Plaintiff told Dr. Clark that she rarely drives due to anxiety (R. 509), plaintiff and her father reported that she usually rides in a car (not drives) when she goes out (R. 316, 332), plaintiff reported shopping for food once a month (R. 316), and plaintiff testified that she does not sew anymore except for maybe a button (R. 63).

[16] The ALJ noted that plaintiff has no difficulty with personal care (showering and grooming) and that she watches television, reads, plays with her phone, makes her bed, prepares frozen meals and sandwiches, handles money, goes outside once or twice a day, checks the mail, does housework, takes care of houseplants, reads the Bible with a friend once a week, and regularly does crossword puzzles. *See* R. 16-17. It is unclear, however, how those activities are related to or undermine the social and other limitations assessed by Dr. Lopez.

about watching her granddaughter while her daughter worked full time, her testimony did not reveal when she began watching her granddaughter, the extent of the mental and physical activities involved in doing so, the age of the granddaughter, the length of time her daughter worked full time, or whether the family friend with whom plaintiff lived assisted her.[17] *See id*. As for caring for her ill father, plaintiff testified that she stayed with or sat with him once or twice a week until the middle of 2015. *See* R. 64-65. The nature of plaintiff's activities at that time, when she began them, or the total duration were not addressed. Regardless of the nature of these caretaking activities, the ALJ did not explain how they were inconsistent with the limitations assessed by Dr. Lopez. In any event, the ALJ accepted plaintiff's testimony that her caretaking activities ended in September 2015, *see* R. 17, and the ALJ did not issue her decision until November 2016. Thus, any caretaking activity was a non-issue for at least for one year of the adjudicative period.[18]

The ALJ's second reason is similarly flawed. Here, the ALJ offers a list of exam findings made by Drs. Lopez and Clark that purportedly undermine and/or are inconsistent with Dr. Lopez's RFC opinion. The ALJ, however, fails to explain how those findings are at odds with any of the limitations assessed by Dr. Lopez. In the absence of a cogent rationale, those findings cannot support the ALJ's broad rejection of limitations assessed

---

[17] The only other evidence that appears to be marginally related to this matter is that plaintiff brought her granddaughter to individual counseling sessions on two occasions and plaintiff's statement to the therapist that she gets "a break from caring for her grandchild now on the weekends." *See* R. 530, 536.

[18] The ALJ also questioned whether Dr. Lopez was aware of plaintiff's "family caregiver role" in forming his opinion. R. 17. For the reasons addressed above, whether he was aware of it or not appears irrelevant, and there is no indication that the ALJ attempted to find out.

by the only treating psychiatrist of record. Moreover, the ALJ's citation to the exam findings appears selective. For example, the ALJ referenced exhibits that included Dr. Lopez's findings of euthymic/stable/good mood, expressive affect, and appropriate behavior and perception, s*ee, e.g.,* R. 455, 457, 459, 524, 526, 561, 564, 576, 579, but the same records also document the use of multiple psychotropic medications and complaints of worsening depression and anxiety, auditory hallucinations, difficulty sleeping, mood swings, anger, little improvement with medication, and restlessness, s*ee* R. 455, 524, 526, 561, 564, 576, 579. Similarly, the ALJ's citation to Dr. Clark's exam findings offers a skewed view of the evidence when not read with psychologist's diagnoses, prognoses, and opinions on plaintiff's mental functioning. *See* R. 506-11, 588-95. Although an ALJ is not required to discuss every piece of record evidence, the ALJ may not pick and choose which evidence supports her decision while disregarding evidence to the contrary. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). To the extent that the ALJ did so in this case, her reliance on the exam findings is improper and prevents the court from determining whether substantial evidence supports the decision. *See id.* (providing that a decision is not supported by substantial evidence if the ALJ "reached the result that [she] did by focusing upon one aspect of the evidence and ignoring other parts of the record.").

Even if the ALJ did not cherry pick the exam findings, most of them appear wholly unrelated to Dr. Lopez's opinion that plaintiff was markedly limited in her ability to respond appropriately to supervisors, coworkers, changes in a routine work setting, or customary work pressures and would not provide the good cause required to reject them. *See, e.g., Harbin v. Comm'r of Soc. Sec.*, 2017 WL 759037, at *10 (M.D. Fla. Jan. 26,

2017) (finding no good cause to discount treating doctor's opinion on the basis of normal mental status exam findings because the mental status exams did not evaluate all areas in which doctor found mental limitations and some abnormal results related to limitations doctor found), *report and recommendation adopted*, 2017 WL 759016 (M.D. Fla. Feb. 27, 2017); *Wrubel v. Comm'r of Soc. Sec.*, 2016 WL 1128294, at *6 (M.D. Fla. Mar. 23, 2016) (concluding that normal findings on mental status exams did not provide substantial evidence to support ALJ's rejection of treating doctor opinion because fluctuations in condition are consistent with a mental impairment).

The ALJ's third stated reason suffers from the same problems. A thorough review of the group therapy notes reveals that the ALJ's citation to active participation, interest, insight, leadership, and feedback to others during group therapy is, at best, a selective reading of the records. Plaintiff attended group therapy approximately once a month from March 2013 to January 2016. Out of approximately fifteen group therapy notes, one documented "showed leadership" (R. 547), nine documented "active in discussion" (R. 541, 543, 545, 547, 549, 570, 572, 582, 585), and seven documented "showed interest" and "showed insight" (R. 541, 543, 545, 547, 549, 570, 572). However, the ALJ failed to mention that the same group therapy notes also documented a depressed/sad or angry mood (R. 541, 549, 570, 572, 582, 585), ongoing relationship issues (R. 541, 549, 570, 572), and reports of anxiety (R. 542, 550, 571, 573, 583), difficulty sleeping (R. 542), ongoing panic attacks (R. 544), and continued depression (R. 549, 583). Other group therapy notes documented an agitated mood (R. 465, 470), rapid speech (R. 465), a depressed affect and dysphoric mood (R. 475), an anxious mood and tearful affect (R. 532), and reports of being

anxious, depressed, and/or angry (R. 465-66, 471, 532), difficulty sleeping (R. 483, 486), and audio/visual hallucinations (R. 532). The ALJ's selective referencing of the group therapy notes renders her finding on the same improper and prevents the court from determining whether substantial evidence supports the ALJ's decision. *See McCruter*, 791 F.2d at 1548.

The Commissioner's arguments do not save the ALJ's decision. The Commissioner argues that the ALJ properly discounted Dr. Lopez's RFC opinion because (1) the opinion was contained in a checklist type form that failed to explain the basis of his opinions; (2) Dr. Lopez's treatment records contained little support for his more extreme restrictions; (3) Dr. Lopez's opinion that plaintiff would have marked impairment in her ability to get along with coworkers or peers is contradicted by observations by other medical sources that plaintiff was cooperative and displayed good eye contact, clear and normal speech, and appropriate behavior; and (4) Dr. Lopez's opinion that plaintiff had marked limitations in other areas is contradicted by plaintiff's testimony. (Doc. 13 at 7-8).

The Commissioner's first two reasons were not articulated or acknowledged by the ALJ. The court must rely on what ALJ said, not on *post hoc* argument by the Commissioner on appeal. *See O*wens v. *Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm simply because some rationale may have supported the ALJ's conclusion). The Commissioner's third reason is meritless. Neither the Commissioner nor the ALJ explain how plaintiff's eye contact, cooperative or appropriate behavior, and normal speech during a consultative psychological evaluation or monthly group therapy sessions with three to six other victims of abuse undercuts or relates to plaintiff's ability to respond appropriately to

supervisors, coworkers, changes in the work setting, or customary work pressures on a sustained basis. The Commissioner's last reason is unpersuasive for the reasons addressed above—i.e., that the testimony by plaintiff on which the Commissioner and ALJ rely was largely taken out of context and/or did not relate to each of the limitations identified by Dr. Lopez.

### III. Examining Doctor Evidence and Dr. Clark

Plaintiff complains that the ALJ provided the same vague reasons for discounting Dr. Clark's opinions as she did for discounting Dr. Lopez's opinion. Plaintiff also contends that Dr. Clark's opinions are consistent with her own examination notes. (Doc. 12 at 12).

The ALJ gave "partial weight" to each of Dr. Clark's opinions—i.e., her 2014 opinion that plaintiff would have moderate to severe impairment in her ability to respond appropriately to supervision, coworkers, and work pressures;[19] her 2016 opinion that plaintiff would have severe impairment in the same; and the opinions she expressed in her 2016 medical source statement.[20] R. 22, 24. As with Dr. Lopez's opinion, the ALJ gave Dr. Clark's opinions weight to the extent they were "consistent with the ability to perform a range of unskilled work with some social functional limitations reflected in the residual functional capacity in this decision." *Id.* The ALJ provided the same reasons for discounting Dr. Clark's opinions as she did for discounting Dr. Lopez's opinion, s*ee* R. 22-

---

[19] Interestingly, the ALJ gave "great weight" to Dr. Clark's 2014 opinion at step three. *See* R.16. The ALJ summarized the opinion by stating that plaintiff could function independently but had diminished ability to relate to others. *See id.*

[20] The ALJ stated that some aspects of Dr. Clark's medical source statement were consistent with the evidence since the application date but did not explain which aspects those were. R. 24.

24. She also provided one additional reason for discounting Dr. Clark's 2014 opinion—because plaintiff "declined to disclose her mentally and physically demanding daily activities such as caring for a grandchild while her daughter worked full-time and caring for her ill father." R. 23.

While the ALJ was not required to accord substantial weight to Dr. Clark's opinions, she was required to state with particularity the weight given to each of the opinions and the reasons therefor. *See Winschel*, 631 F.3d at 1179. The ALJ does not explain the "partial weight" given to Dr. Clark's opinions or identify those aspects of Dr. Clark's opinions that are accepted or rejected. In the absence of a clearly articulated statement of the weight accorded the limitations assessed by Dr. Clark and the grounds for rejecting any of the same, the court cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence and reversal is warranted. *See id.*

Moreover, the ALJ fails to explain how the laundry list of plaintiff's activities or social interactions, selective findings on exam, and selective observations from group therapy sessions are inconsistent with any of the limitations assessed by Dr. Clark. None of the activities, findings, or observations cited by the ALJ appear to speak directly to plaintiff's ability to respond appropriately to supervision, supervisors, coworkers, changes in a routine work setting, or work pressures. In the absence of a rationale to the contrary, those reasons cannot support the ALJ's rejection of Dr. Clark's opinions that are at odds with the ALJ's RFC determination.

As for the ALJ's only other reason for discounting Dr. Clark's 2014 opinion, it is speculative and unsubstantiated. To the extent that the ALJ believed plaintiff "declined to

disclose" to Dr. Clark that she cared for her granddaughter and ill father, that belief appears speculative. It is just as plausible that (1) plaintiff was not engaging in any caretaking activities at the time of the first consultative evaluation,[21] or (2) plaintiff mentioned to Dr. Clark that she watched her granddaughter and regularly cared for her father, but Dr. Clark did not include the same in her report.[22] More importantly, the record is silent as to the nature and extent of the mental and physical activities required of plaintiff in performing either activity. Consequently, the mental and physical demands of those activities cannot be ascertained, let alone fairly characterized as "demanding," and cannot provide substantial evidence to support the ALJ's rejection of those portions of Dr. Clark's assessment that exceed the ALJ's RFC determination.

The Commissioner's arguments do not compel a different result. The Commissioner contends that substantial evidence supports the ALJ's decision to give limited weight to Dr. Clark's 2016 opinion that plaintiff was severely impaired in her to relate to others because (1) exam records showed plaintiff displayed good eye contact, cooperativeness, clear and normal speech, and appropriate behavior, and (2) plaintiff testified that she went to the store, went to church, and engaged in Bible study with a friend. Doc. 13 at 9.

---

[21] The ALJ does not point to any evidence demonstrating that plaintiff was caring for her granddaughter or ill father at the time of Dr. Clark's consultative evaluation in 2014. To the contrary, the function reports completed by plaintiff and her father in June 2014 (roughly two months before the consultative evaluation) state that plaintiff did not take care of anyone else. *See* R. 314, 330.

[22] Dr. Clark did note that plaintiff was dealing with family stressors—i.e., her father's and daughter's having cancer. R. 588.

Again, both the ALJ and Commissioner fail to demonstrate how plaintiff's demeanor during a mental or physical exam and monthly group therapy sessions undermines the opinions of Drs. Clark and Lopez that plaintiff would have severe or marked difficulties interacting with supervisors or coworkers in a routine work setting. Nor does either explain how plaintiff's ability to grocery shop once a month, attend church about three times a month, and read the Bible at home with a friend once a week undermines the limitation discussed herein. Nor does the Commissioner address the ALJ's apparent rejection of other aspects of Dr. Clark's 2016 and 2014 opinions. Although the ALJ found that plaintiff was limited to "simple, routine tasks with *occasional change in a routine work setting*," *see* R. 18, that limitation does not appear to address or take into account Dr. Clark's 2016 opinion that plaintiff would have marked limitations in her ability to respond appropriately to usual work situations <u>and</u> to changes in a routine environment. *See* R. 595. Nor does the ALJ's RFC determination appear to take into account Dr. Clark's opinion that plaintiff would have a moderate (2014) or severe (2016) impairment in her ability to respond appropriately to work pressures.

## IV.    Non-examining Doctor Evidence and Dr. Williams

Plaintiff argues that the ALJ's consideration of Dr. Williams' mental RFC assessment is inconsistent with the ALJ's consideration of Dr. Williams' PTR opinion at step three. Doc. 12 at 12. The court disagrees. The only aspect of Dr. Williams' PRT opinion that the ALJ rejected was related to periods of decompensation. *See* R. 16. Dr. Williams' mental RFC assessment does not address periods of decompensation. Accordingly, there is no inconsistency on this basis.

Upon review of the ALJ's consideration of Dr. Williams' mental RFC assessment, however, the court finds that it fails to comport with governing authority. The ALJ found that Dr. Williams' mental RFC assessment "indicat[ed] that the claimant could perform a range of unskilled work with some social functioning limitations." R. 23. The ALJ gave "great weight" to his assessment, finding that it was "generally consistent with the evidence since the application date." *Id.*

The ALJ did not address the specific limitations Dr. Williams assessed. *See* R. 23. Nor did the ALJ qualify her acceptance of Dr. Williams's opinion evidence, or expressly discredit any portion of that evidence. *See id.* Consequently, the ALJ's mental RFC determination is irreconcilable with Dr. Williams' opinion that changes in the workplace should be infrequent and gradual, that plaintiff would work best in a well-spaced area (due to a moderate limitation in the ability work in coordination with or in proximity to others without being distracted by them), and that feedback from supervisors should be constructive and supportive, and the ALJ does not explain why those limitations were excluded from the RFC determination.

While the ALJ is "not required to adopt any prior administrative medical findings," *see* 20 C.F.R. § 416.913a(b), because the ALJ did not explain why certain portions of Dr. Williams' mental RFC assessment were not incorporated in her RFC determination despite affording his opinion great weight, the court is unable to determine how the ALJ evaluated his opinion. *See Ingram*, 496 F.3d at 1260; *Cornelius*, 936 F.2d at 1145-46. Accordingly, remand is warranted on this ground. *See Monte v. Astrue*, No. 5:08-CV-101-OC-GRJ, 2009 WL 210720, at *6-7 (M.D. Fla. Jan. 28, 2009) (remanding for the ALJ to "re-address [a

non-examining state agency physician's] assessment of Plaintiff and specifically articulate reasons for either accepting or rejecting each aspect of" the opinion).

## CONCLUSION AND ORDER

For the reasons explained above, the decision of the Commissioner will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that the Commissioner can conduct additional proceedings consistent with this opinion. The court does not reach plaintiff's arguments that are not expressly discussed herein. On remand, the court expects that the Commissioner will consider plaintiff's arguments as to those issues as well and will develop the record as is necessary in areas not expressly considered in this opinion.

DONE, on this the 30th day of September, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge